Your Honor, my name is Shell Harrell. I'm here for the City of Hermosa Beach and Officer Dave Bohashek. This case is before this Court on a grant of a motion for summary judgment. And the reason why summary judgment was so appropriate in this case, the Court takes a look at the record. The record before the trial court was out of plaintiff's own mouth, his own testimony, as to where he'd been and what he had done. As indicated on footnote 2 of the trial court's order, this case does have a history of stalking. Not what we say. You don't even have to look at what we say. You can look at what the plaintiff says. Plaintiff says that before the incident on the pier on July 22, 2000, Plaintiff's best friend at the Hermosa Beach Police Department was demoted from the rank of Sergeant to Officer. And that happened because Officer Bohashek heard him say an ethnic slur and reported it. After that, Mr. Hallstein, best friend of the officer that lost his sergeant stripes, buys a police scanner, buys a code book on how to determine... Can you just deal with the allegations as they are? Aren't they... Isn't your case trying enough without getting into the provocation? Well, I would say that it is pertinent for background, and it certainly is pertinent because, again, this is not what the city and its employees are saying. This is what Mr. Hallstein is saying. The city has a whole lot more that it could say, but this is a motion for summary judgment. Mr. Hallstein indicates that... But a motion for summary judgment seems to me it's not very useful at all, because if, for example, we thought his First Amendment claim was otherwise cognizable, the fact that Hallstein may have had a motive other than retaliation for running his license, i.e. that the guy was a pain in the neck and he was mad at him, would be a jury question. So I don't see how the motives are at all useful at this point. Well, I responded to some of the remarks that had been made by plaintiff's counsel when he was up here about terrorist threats and all these other excitable words that just simply are not borne out in the record. Plaintiff's counsel was specifically... Well, there wasn't a fault, and it was prosecuted, as I understand it. And if his theory was right, i.e. that if there is a state criminal law, then he has liberty and interest to not be subject to that state here, and therefore he automatically has a 1983 case, then he could be right. Why isn't he right? Well, let me see if I can address that point. For the assaulter. Let's suppose the assault came about because of all the background. Still, it wasn't an assault. So what then? I'm sorry. There's a little bit of an echo. I'm sorry about that. I think what the court asked me was move to the merits and why has he not got a claim under Section 1983. As the court is aware, Section 1983 is not a codification or a vehicle for California state court law. Everything, almost everything that plaintiff's counsel said was a citation to California law. I don't know that it's in the briefs, but right now as we speak, plaintiff's state court claims were remanded to the Los Angeles County Superior Court system, and they are awaiting assignment to a trial courtroom as I speak. Maybe plaintiff has something there. We contend that he does not, quite vigorously so. But under Section 1983, he has to be pointing not to some California penal code statute, not to the vehicle code. He needs to be pointing to federal constitutional law. Well, the problem is, you know, there is some case support, although I've never quite understood how, you know, where its limits are, that says that a violation of state law can be a deprivation of due process, the interest being the interest in the enforcement of the state law. Well, I think that if the court has a hard time following that, and I admit that I do, too, that brings us to qualified immunity, which in Salcier v. Katz, the Supreme Court, has said that there has to be some type of notice that's out there putting an officer on notice that running a license plate when the person passes them on the street after this history of stalking, that that will give rise to a constitutional claim, so they'll know not to do that. There was no such authority anywhere by any circuit, by anyone at any time, that hinted, intimated, or said that if you do this after you're stalked, admitted by a plaintiff, that you're going to be in federal court and you will owe him money. There's no law that says that. When Plaintiff's counsel was up here, he couldn't even articulate what the appropriate test should be. That's how vacant the law is. Let's take the First Amendment claim. That's like the least poor statute. Let's suppose that there were enough evidence in the record from which a jury could infer that Halstein was, in fact, running license checks on, not Halstein, that Bohatchik was running license checks on Halstein, and that that was because he had reported him to the police. And let's suppose that that was a violation of California law, or certainly not a pleasant thing to have. It was unauthorized. He had no business doing it. Could that be a First Amendment violation? No. Why? Here's the reason why. Because under the First Amendment, there must be some actionable retaliation. Sitting in your home with the door shut and the phone off the hook and hating another person is never enough to give you a First Amendment claim. But he didn't do that. He was supposedly going around and just being obnoxious, staring at him and all. I mean, it was petty ante stuff, but he wasn't sitting in his house. And I agree with the Court. There has to be some follow through. And as the Court indicated, having read the briefs, what we are talking about here is petty ante stuff, if there ever was any. We're talking about glares, stares, hostile looks. Why is that petty ante? That's petty ante because courts have said that it is. The Eighth Circuit had it. Read me the language of a court that said that's petty ante. Well, they didn't use that exact word. Here you've got a police officer who's sworn to, you know, serve and protect. And he goes around and challenges people to fights and stares at him and stops the wife and stares at her and threatens him. You think that's petty ante stuff? Well, the Eighth Circuit has said that it's petty ante. Well, I don't care what the Eighth Circuit said. Okay. Do you think it's petty ante stuff? I do think that if it's anything, it's something for California State tort law. It's not the law. Why? That's what I'm trying to find out, is there was a complaint made. And the issue is whether there would be enough to demonstrate on this record that the reason that the hatch was engaging a baby, including the license check, which I must say really does bother me. I mean, he had no business doing it. He was doing it for personal reasons. And it's not the purpose of his access to the license information. So that's not sitting in his house. So why isn't that enough to establish a first amendment violation? Because as this Court has said in the past in published cases, verbal abuse, hostile swearing, much more than just simple staring or a hostile look, does not give rise to ‑‑ I'm sorry. I missed that. I'm running the license check. It's coming from up here. See? Not from down there. Okay. See? I'm really sorry about the communication problem. I wish you the best of luck on your recovery. I do. I was looking in the wrong place. Why is running the light? Because plaintiff needs to do more than sit there and say, I'm offended under California law. He needs to, in this court system, under Section 1983, he needs to point to an amendment to the Constitution. And he has ‑‑ He did. It was a first amendment. He said the only reason he did this thing that he had no right to do to me was because ‑‑ which upsets me because he's getting access to information that he has no business getting access to, is because I made a complaint against him. Well, I don't understand how, when the statute, the very vehicle code that plaintiff counsel cites, indicates that the DMV computer is open to law enforcement, he was wearing his badge, he was on duty, he was within eye contact. Do you think it was okay for him to do it because he's mad at this guy for making a complaint against him? I can ‑‑ he can be as mad and hostile as anybody can ever be, but there has to be some actionable retaliation. Actionable retaliation, I would submit, is not running somebody's license plate when you're in uniform, when the vehicle code says you have access to it. Actionable retaliation is not glaring. It's not staring. And that's all that Hallstein says. I think one important point that needs to be made here, and it is in the record and I'll flag it for the court, it's set forth in our trial court brief at page 8, lines 10 through 18. One thing I will agree with plaintiff's counsel on is that Hermosa Beach is a small city, and Mr. Hallstein's shop is directly across the street from the police department. So Mr. Hallstein, as I indicated in the trial court brief, was not angry or upset that they would run across each other. He himself understood that in that city where they both work, that's going to happen. So I will indicate to the court that on a 14th Amendment claim, again, if we go to public policy, if this court were to set forth the rule or the law that retaliation claims under the 14th Amendment can be made, tried, litigated in the trial courts and in this court on appeal, in the real world, there is so much glaring and staring that goes on in every workplace in this circuit. And you're talking about peace officers. Don't you understand that? And I do. And but, again, if you go to peace officers, it cannot be that low of a threshold. It cannot be that a dirty look gets you into federal court. This court, amongst others, has said that we're not going to You've got him exercising his right to petition the government. That's what he did. All right. And then certain consequences flowed from that. This assault that took place, this staring at him, you know, took place and all of that. I mean, what was the purpose of all that, just to be real cute? Well, this is not the first panel or the first court to hear these type of claims. And I'll indicate to this court that we're at an important juncture here. If the word goes out from this court that glaring, staring and hostile looks from law enforcement I want to put aside the glaring, staring and hostile looks. But doing investigations, i.e. running checks into information that, while I don't think it's a Fourth Amendment violation, it's private information and private under California law that he has access to for official purposes but not for personal purposes, and doing it for a retaliating purpose, which I'm just assuming, and that I understand is in question, but that's the allegation. Why isn't that sufficient? Suppose somebody was, suppose Paul Hashick was to say, you know, I really had it with this Paul Steen because he's reporting me and getting me in trouble and I'm going to just investigate every aspect of his life until I come up with something I can prosecute him for. Suppose that's what he did. Well, the court is focused on the motivation of the officer. Yes, that's how the First Amendment claim runs. Well, I will tell the court that there is no question but that these two individuals evidently don't care for each other. Okay? But you want to tell me that there's not enough here to substantiate that that was the motive. We can talk about that. But that's not what you've been saying so far. Right. What you've been saying is that even assuming my assumption, i.e., that the reason why he ran this license check and one could, you know, he could have done other things. He could have investigated everything in his life. It was because he had a badge and a uniform. That that would not give rise to a cause of action because as a policeman he has the right to make those investigations. Period. Even if he's doing it for a retaliatory purpose. That's what I understood you to be saying. Well, there are plenty of retaliation cases that do rise above the minor and the trivial. One of those is the McBride case that plaintiff's counsel cited down in the trial court and I believe has stopped citing it here. In that case there was a newspaper reporter who had a chair thrown at her by law enforcement. Apparently she was writing some articles that law enforcement did not like. I suppose what they did instead of throwing a chair at her was they ran her they ran warrant checks on her every day hoping they'd come up with something. Well, I, you know, I don't have all the facts there, but I would indicate to the court that what we do know from every court that has looked at this issue in the past of claims similar to Mr. Hallstein's that glaring and staring and harassment. You're not answering the question. Let's forget the glaring and staring. I'm asking about an investigation using police authority but for purposes that are not legitimate police purposes but instead based on a complaint she made. Well, I would indicate there that there is a paucity of authority that talks about that in the retaliation context. I'm not aware of any case that has dealt with that exact point. I'm aware of many cases that have said that is not a violation of the Fourth Amendment. Okay. I'm asking about the First Amendment. Right. Right. So I don't really follow how something cannot be a violation of the Fourth Amendment but yet can be drug over and can be actionable retaliation under the First Amendment. It seems like to me the courts have already said that's not a violation of the Constitution. If you attach it to a bad motive, that shouldn't change the result. Counsel. Yes. Sorry. Never mind. We're so far over time, I'm not going to ask. I don't have any place else to be. All right. Anything else? Your Honor, thank you. I appreciate it. All right. Well, do you want to say anything or are you just going to sit there and mope? Yes, sir. I believe I don't need to respond. Okay. Fine. All right. The matter is submitted. Okay, Your Honor. Thank you. Thank you. All right.
judges: Pregerson, Fernandez, Berzon